**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

CHRISTOPHER T. M.,

                                    Plaintiff,                    No. 1:23-CV-141
                                                                  (LEK/CFH)

            v.

COMMISSIONER OF SOCIAL SECURITY,

                                    Defendant.
_____

**APPEARANCES:**                           **OF COUNSEL:**

Olinsky Law Group                          HOWARD D. OLINSKY, ESQ.
250 S. Clinton St., Ste. 210
Syracuse, New York 13202
Attorneys for Plaintiff

Social Security Administration             VERNON NORWOOD, ESQ.
Office of General Counsel
6401 Security Boulevard
Baltimore, Maryland 21235
Attorneys for Defendant

**CHRISTIAN F. HUMMEL**
**United States Magistrate Judge**

**REPORT and RECOMMENDATION**[1]

        Plaintiff Christopher T. M.[2] brings this action pursuant to 42 U.S.C. § 405(g)

seeking review of a decision by the Commissioner of Social Security ("the

Commissioner" or "defendant") denying her applications for disability insurance and

_____

[1]  This matter was referred to the undersigned for report and recommendation by the Honorable
Lawrence E. Kahn, Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and Northern
District of New York Local Rule 72.3.
[2]  In accordance with guidance from the Committee on Court Administration and Case Management of the
Judicial Conference of the United States, which was adopted by the Northern District of New York in 2018
to better protect personal and medical information of non-governmental parties, this Memorandum-
Decision and Order will identify plaintiff by first name and last initial.

supplemental security income benefits.  *See* Dkt. No. 1 ("Compl.").   Plaintiff moves for judgment on the pleadings and for the Commissioner's decision to "be remanded for further administrative proceedings, including a de novo hearing and a new decision." Dkt. No. 15 at 18.   The Commissioner seeks affirmance of the Commissioner's determination that plaintiff is not disabled.  *See* Dkt. No. 17.  Plaintiff field a reply.  *See* Dkt. No. 18.  For the following reasons, it is recommended that the matter be remanded for further proceedings.  For the reasons discussed below, it is recommended that Commissioner's decision be vacated, and Plaintiff's case be remanded for further proceedings consistent with this report and recommendation.

## I. Background and Procedural History

Plaintiff was born on March 8, 2003.  *See* T. at 59.[3]  He was placed in foster care at three days old.  T. at 176; *see also* T. at 398 (stating plaintiff "was adopted when he was only 2 weeks old").  His birth mother did not receive adequate prenatal care.  T. at 176, 381; *See also* T. at 354.  Plaintiff tested positive for drugs and alcohol at birth.  T. at 176, 398.  He did not speak until he was three years old.  T. at 265, 354-55.  He completed some high school but dropped out before graduating.  T. at 42.  The highest grade of school plaintiff completed was the eleventh grade, and may have attended some of 12th grade.  T. at 194-95.  As of October 5, 2022, plaintiff was pursuing a GED. T. at 42.  He was making adequate progress towards completion of his courses, and his teachers were encouraging him to challenge the GED exam.  T. at 48.  Plaintiff worked

---

[3] The Administrative Transcript is found at Dkt. No. 9.  Citations from the Administrative Transcript will be referred to as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the pagination generated by Court's electronic filing and case management system ("CM/ECF").  All other citations, including to the briefs, refer to the pagination generated by the Court's CM/ECF electronic filing system.

at Lowe's Home Improvement for approximately one week in 2021.  T. at 43, 164.  He also assisted his father at his construction business several times over a six-year period and claims to have received around $200 per job.  T. at 44.

Plaintiff's adoptive mother, Lucille Monroe, passed away on December 18, 2018. T. at 158.  On March 30, 2021, plaintiff filed a Survivor's Claim for Child's Insurance Benefits ("CIB") alleging disability beginning August 1, 2020.  T. at 19, 159.  This claim was filed on Ms. Monroe's Social Security records.  T. at 191.  Plaintiff alleges autism as a mental condition limiting his ability to work.  T. at 194.

Plaintiff's application was initially denied on August 17, 2021.  T. at 97.  He submitted a request for reconsideration on September 17, 2021.  T. at 105.  His claim was reconsidered and denied on May 24, 2022.  T. at 106.  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") on June 9, 2022.  T. at 114.  ALJ David Neumann conducted a hearing by telephone on October 5, 2022.  T. at 35.  The ALJ heard the testimony of Plaintiff, who was not represented, as well as vocational expert ("VE") Cherie Plante.  T. at 34.  Plaintiff was cautioned about his right to representation, informed about the role of a representative at the hearing and the potential benefits of accepting representation, and offered a short postponement to obtain representation. T. at 36-37.  Plaintiff chose to waive his right to representation and proceed with the hearing.  T. at 37.

At the hearing, plaintiff testified he has a condition on the autism spectrum, as well as dyslexia and ADHD.  T. at 44.  He testified these conditions hamper his ability to talk to people, read or speak clearly, and maintain focus.  T. at 44-45.  Plaintiff reported that he lives with his father and spends most of the day on his computer, leaving twice a

3

week to attend GED classes.  T. at 43, 47.  He also reported that he helps with some chores, such as bringing in the mail, feeding a pet cat, and stacking firewood, but otherwise he does not leave the house.  T. at 49-50.

On October 24, 2022, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act.  T. at 16.  On November 17, 2022, plaintiff requested that the Social Security Appeals Council review the ALJ's decision.  T. at 157.  The ALJ's decision became the final decision of the Commissioner of Social Security when the Appeals Council denied plaintiff's request for review on December 22, 2022.  T. at 1.  Plaintiff timely commenced this action on February 1, 2023.   Dkt. No. 1.

## II. APPLICABLE LAW[4]

### A. Scope of Review

In reviewing a final decision of the Commissioner, a court must first determine whether the correct legal standards were applied, and if so, whether substantial evidence supports the decision.  *See Atwater v. Astrue*, 512 F. App'x 67, 69 (2d Cir. 2013).  "Failure to apply the correct legal standards is grounds for reversal."  *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) (internal quotation marks and citation omitted).  A reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).

---

[4] Although the Supplemental Security Income program has special economic eligibility requirements, the requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3) and Title II, 42 U.S.C. § 423(d), are identical, so "decisions under these sections are cited interchangeably."  *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

## B. Standard for Benefits[5]

"Every individual who is under a disability shall be entitled to a disability . . . benefit . . . ." 42 U.S.C. § 423(a)(1)(E). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" *Id.* § 423(d)(1)(A). A medically-determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based upon age, education, and work experience. *See id.* § 423(d)(2)(A). Such an impairment must be supported by "medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3). Additionally, the severity of the impairment is "based on objective medical facts, diagnoses[,] or medical opinions inferable from [the] facts, subjective complaints of pain or disability, and educational background, age, and work experience." *Ventura v. Barnhart*, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing *Mongeur v. Heckler*, 722 F.2d 1033, 1037 (2d Cir. 1983)).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. § 404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

---

[5] Although the Supplemental Security Income program has special economic eligibility requirements, the requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3) and Title II, 42 U.S.C. § 423(d), are identical, so "decisions under these sections are cited interchangeably." *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

If he [or she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his [or her] physical or mental ability to do basic work activities.

If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.

Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

*Berry*, 675 F.2d at 467 (spacing added). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). The plaintiff bears the initial burden of proof to establish each of the first four steps. *See DeChirico v. Callahan*, 134 F.3d 1177, 1180 (2d Cir. 1998) (citing *Berry*, 675 F.2d at 467). If the inquiry progresses to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere. *Id.* (citing *Berry*, 675 F.2d at 467).

In addition to the typical five-step analysis outlined in 20 C.F.R. § 404.1520a, the ALJ must apply a "special technique" at the second and third steps to evaluate alleged mental impairments. *See id.* SSR 96-8p stresses that the "special technique" described in 20 C.F.R. § 404.1520a is *not* an RFC assessment, and further, the mental RFC assessment used at steps four and five "requires a more detailed assessment."

SSR 96-8P (S.S.A. July 2, 1996). This "special technique" is used by ALJs to determine, as a threshold matter, whether a claimant has one or more medically determinable mental impairments. *Amanda R. v. Comm'r of Soc. Sec.*, 556 F. Supp. 3d 145, 151 (N.D.N.Y. Aug. 17, 2021). If the claimant suffers from one or more impairments, "[t]his technique also enables administrative law judges to determine whether [those] medically determinable mental impairments are severe (a Step 2 issue) and whether they meet or are equivalent in severity to any presumptively disabling mental disorder (a Step 3 issue)." *Id*.

At the first step of this special technique, the ALJ must evaluate "symptoms, signs, and laboratory findings" to determine whether the claimant has one or more medically determinable mental impairments. 20 C.F.R. § 404.1520a(b)(1). If so, at step two of the special technique the ALJ must rate the degree of functional limitation that results from the medically-determinable mental impairment(s). 20 C.F.R. § 404.1520a(b)(2). This involves the consideration of the degree of functional limitation present in "four broad functional areas": (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting and managing oneself. 20 C.F.R. § 404.1520(c)(3).[6]

These four functional areas are measured on a five-point scale that ranges between "none," "mild," "moderate," "marked," and "extreme," with the last point on the scale representing "a degree of limitation that is incompatible with the ability to do any gainful activity." 20 C.F.R. § 404.1520a(c)(4). If, however, the degree of limitation in

---

[6] These areas of functioning, also known as "B Criteria," were revised on January 17, 2017. Prior to January 17, 2017, they were known as "activities of daily living," "social functioning," "concentration, persistence, or pace," and "episodes of decompensation."

each of these areas is "none" or "mild," the impairment will be considered non-severe absent evidence that "otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." *Id.* § 404.1520a(d)(1); *see also Ornelas-Sanchez v. Colvin*, 632 F. App'x 48 (2d Cir. 2016) (summary order) (holding that the ALJ failed to properly follow the special technique, and effective review was frustrated, where he only "conclusory noted" that the record showed that the plaintiff's impairments caused more than minimal functional limitations and interfered with her ability to perform some basic work-related activities.)

### C. Standard for ALJ Evaluation of Opinion Evidence

The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017,[7] and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded. According to the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017), *see* 20 C.F.R. § 404.1520c(a). Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors." 20 C.F.R. § 404.1520c(a)-(c).

---

[7] As plaintiff's application was filed on March 30, 2021, the new regulations apply. *See* T. at 19.

"Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still 'articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions.'" *Thomas H. v. Comm'r of Soc. Sec.*, ___ F. Supp. 3d ___, 2023 WL 3731332, at *4 (W.D.N.Y. May 31, 2023) (quoting *Andrew G. v. Comm'r of Soc. Sec.*, No. 3:19-CV-0942 (ML), 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020); *see also* 20 C.F.R. § 404.1520c(a), (b)(1). The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" forming the foundation of the treating source rule. *Revisions to Rules*, 82 Fed. Reg. 5844-01 at 5853.

An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. § 404.1520c(b)(2). With respect to "supportability," the new regulations provide "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). The regulations provide with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2).

An ALJ must "'articulate how [he] considered the medical opinions' and 'how persuasive [he] find[s] all of the medical opinions.'" *Brian O. v. Comm'r of Soc. Sec.*,

No. 1:19-CV-983 (ATB), 2020 WL 3077009, at *4 (N.D.N.Y. June 10, 2020) (quoting 20 C.F.R. §§ 404.1520c(a)-(b)(1), 416.920c(a)-(b)(1)).  Further, although an ALJ is specifically required to "explain how [she] considered the supportability and consistency factors," an "an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion." *Brian O.*, 2020 WL 3077008, at *4 (citing 20 C.F.R. § 404.1520c(b)(2)).  "However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5)." Id. (citing 20 C.F.R. § 404.1520c(b)(3).

### III. THE ALJ'S DECISION

In his October 5, 2022, decision, the ALJ applied the five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims.  T. at 20.  The ALJ also applied the two-step special technique for mental impairment assessments.  T. at 22.  The ALJ began by determining Plaintiff had not reached the age of 22 at his alleged onset date of August 1, 2020.  T. at 21; *See* 20 C.F.R. § 404.350(a) (a claimant is entitled to CIB on the earnings record of an insured person who has died if they "are 18 years or older and have a disability that began before [they] became 22 years old.")  Next, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since his alleged onset date.  T. at 21.  Although Plaintiff worked briefly at Lowe's Home Improvement after his alleged onset date, his earnings of $454.89 did not rise above the monthly substantial gainful activity threshold.  *Id.*

Next, the ALJ determined Plaintiff has the following severe impairments: "mild autism spectrum disorder and rule out anxiety disorder." *Id.*

The ALJ then determined that plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1 ("the Listings"). T. at 22. The ALJ considered whether Plaintiff's mental impairments meet or medically equal listing 12.06 ("Anxiety and obsessive-compulsive disorders") and 12.10 ("Autism spectrum disorder"). *Id.* The ALJ applied the B Criteria at this step, determining as follows: "in understanding, remembering, or applying information, the claimant has a mild limitation," "[i]n interacting with others, the claimant has a moderate limitation," "[w]ith regard to concentrating, persisting, or maintaining pace, the claimant has a moderate limitation," and "[a]s for adapting or managing oneself, the claimant has experienced a moderate limitation." T. at 22-23. The ALJ concluded Step 3 by reiterating that "the limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment." T. at 24.

At Step 4, the ALJ concluded that plaintiff had the RFC to perform a full range of work at all exertional levels. *Id.* The ALJ tempered that RFC finding with non-exertional limitations, namely "the claimant can perform simple work with occasional interaction with supervisors/co-workers/the public and no more than occasional changes in the work setting." *Id.*

The ALJ noted Plaintiff has no past relevant work. T. at 27. At Step 5, the ALJ determined that, given Plaintiff's age, education, experience, and RFC, there are jobs in the national economy he can perform. *Id.* Specifically, the ALJ credited the VE's

testimony that Plaintiff could work as a "Cleaner II," "Router," or "Mail Clerk." *Id.*  Thus, the ALJ determined that Plaintiff has not been under a disability, as defined by the Social Security Act, from August 1, 2020, until the date of the ALJ's decision, October 24, 2022. *Id.*

## IV. ARGUMENTS

Plaintiff contends that the ALJ's decision is legally erroneous and largely unsupported by any evidence-based logical rationale.  *See* Dkt. No. 15 at 1. Specifically, Plaintiff contends that the ALJ failed to articulate how he considered the medical opinions and how persuasive he found them.  *Id.* at 12.  Plaintiff draws issue with language in the ALJ's decision to the effect that some medical opinions are persuasive "to the extent that [they] are consistent with the residual functional capacity." *Id.* at 12 (citing T. at 26-27.)

Defendant argues that the ALJ based his decision on substantial evidence, namely the opinions of Drs. Hartman, Momot-Baker, Williams, and Fein.  *See* Dkt. No. 17 at 9.  Defendant argues that the ALJ's comments to the effect that certain opinions are persuasive "to the extent that [they] are consistent with the residual functional capacity" was merely "awkward phrasing" which should be overlooked in favor of "substantial evidence that supports [the ALJ's] evaluation of the opinions of Drs. Hartman, Fein, and Williams."  T. at 26-27; Dkt. No. 17 at 14.  Defendant also stresses that the ALJ's findings of fact must be evaluated according to the highly deferential substantial evidence standard.  *See* Dkt. No. 17 at 16.

## V.  DISCUSSION

**A. An ALJ's failure to address the supportability or consistency of a medical opinion or prior administrative medical finding is an error of law**

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Lamay v. Comm'r of Soc. Sec*, 562 F.3d 503, 507 (2d Cir. 2009).  Under 20 C.F.R. § 404.1520c(b)(2), an ALJ must articulate how he or she considered the factors of supportability and consistency for every medical opinion or prior administrative medical finding ("PAMF").  While "'an ALJ does not have to state on the record every reason justifying a decision' and 'is not required to discuss every single piece of evidence submitted,'" he must at the very least "articulate in [his] determination or decision how persuasive [he found] all of the medical opinions and all of the prior administrative medical findings."  *Ryan v. Comm'r of Soc. Sec.*, No. 21-2947-cv, 2022 WL 17933217 at *2 (2d Cir. Dec. 27, 2022) (citing *Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 448 (2d Cir. 2012)); 20 C.F.R. § 404.1520c(b).

A reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence.  *See Johnson*, 817 F.2d at 985.  "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have [his] disability determination made according to the correct legal principles."  *Id.* at 986.

The ALJ did not articulate his consideration of the persuasiveness of several of the opinions and PAMFs.  Thus, the ALJ failed to apply the correct legal standard in adjudicating Plaintiff's case.  Therefore, it is recommended that the ALJ's decision be

13

vacated, and the matter must be remanded to the Social Security Administration for further proceedings consistent with this report and recommendation.

### 1. Brett Hartman, Psy.D.

Beginning with Dr. Hartman's opinion, the ALJ did not address consistency at all, and addressed supportability in a fashion such that "a reasonable factfinder would have to conclude otherwise" when it comes to determining that the review is supported by substantial evidence. *Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 448 (2d Cir. 2012). The first three sentences of the ALJ's discussion are a summary of Dr. Hartman's conclusions.  T. at 26 (citing T. at 399-400).  This summary lays the groundwork for an assessment of the consistency of Dr. Hartman's opinion with "the evidence from other medical sources and nonmedical sources in the claim," but the ALJ uses it to assess consistency "with the residual functional capacity . . . "  in the fourth sentence of this paragraph.  20 C.F.R. § 404.1520c(c)(2); T. at 26.  The ALJ proceeds to state, "because to that extent, it is generally consistent with the diagnoses, treatment records, and other objective evidence."  T. at 26.  This is a proper recitation of the standard, but not an application.  An application of that standard should assess with sufficient detail the diagnoses, treatment records, and other objective evidence with which Dr. Hartman's opinion is consistent.  "It is procedural error for an ALJ to fail to explain how [he or she] considered the supportability and consistency of medical opinions in the record.'"  *Wanda N. v. Comm'r of Soc. Sec.,* No. 6:21-CV-00358, 2022 WL 4376484, at *7 (N.D.N.Y. Sept. 22, 2022) (quoting *Celia A. B. v. Comm'r of Soc. Sec.*, 5:21-CV-112 (CFH), 2022 WL 4225540, at *4 (N.D.N.Y. Sept. 13, 2022)) (additional citation omitted).

Stating that the opinion is so consistent is a conclusion, not an articulation of how the ALJ reached that conclusion as required by 20 C.F.R. § 404.1520c(b)(2).  *See Loucks v. Kijakazi*, No. 21-1749, 2022 WL 2189293 at *2 (2d Cir. Jun. 17, 2022) (noting that an ALJ committed procedural error when they did not address an opinion's supportability or explain how the opinion was consistent with the record, except to conclude that it was.)

In the sixth sentence of this paragraph, the ALJ appears to mix up the issues of consistency and supportability.  He notes he is not persuaded that Dr. Hartman's opinion is consistent with the record, but references findings that Dr. Hartman himself made during his consultative examination.  T. at 26 (citing T. at 398).  This goes to the issue of supportability: as Plaintiff correctly points out, "Supportability is an internal check that references objective medical evidence and supporting explanations that come from the source itself."  Dkt. No. 15 at 12 (citing 20 C.F.R. § 404.1520c(c)(1), 82 Fed. Reg. at 5853).

The ALJ offers that "the claimant was cooperative and pleasant" during the examination as evidence that "the marked limitations in the areas of interacting with others and adapt and managing oneself" are not "entirely consistent with the record."  T. at 26 (citing T. at 398).  No reasonable factfinder could accept that this remark, without more, seriously detracts from the supportability of Dr. Hartman's opinion, and the ALJ does not offer any further analysis to support his point.  *See generally Rucker v. Kijakazi*, 48 F.4th 86, 93 (2d Cir. 2022) (noting that a claimant's "ability to attend counseling sessions . . . has no bearing on her ability to attend work.); *Patrick M. v. Saul*, No. 3:18-CV-290, 2019 WL 4071780, at *10 (N.D.N.Y. Aug. 28, 2019) (noting that the "Plaintiff's ability to attend medical appointments and engage in other daily activities

of limited duration do not correlate to the Plaintiff's ability to stay on-task during an eight hour work day"). Plaintiff may have been "cooperative and pleasant," but that description is tempered on the same page by indications that plaintiff maintained "fair to poor eye contact" and spoke in "a monotonous manner" with a "restricted" affect. T. at 398. Plaintiff's "coherent and goal directed" thought process could, potentially, further support the point the ALJ was trying to make, but the ALJ does not cite this as support so the Court is unable to know whether he relied on it. *Id.*; *see* T. at 26.

Plaintiff's cooperative and pleasant affect, together with other conflicting evidence from Dr. Hartman's opinion, *could* potentially be enough to erode its supportability. *See Holly S. v. Comm'r. of Soc. Sec.*, No. 5:22-CV-1042, 2023 WL 9552892, at *8 (N.D.N.Y. Sep. 19, 2023) (noting that an ALJ correctly rejected portions of a medical opinion when the claimant was "described as cooperative or pleasant in medical appointments" *in addition to* having a normal affect and mood, intact judgment, insight, and memory, as well as normal impulse control and attention span). However, as detailed below, Dr. Hartman's opinion does not contain any evidence beyond plaintiff's cooperative and pleasant affect to erode the supportability of his opinion.

Indeed, there is significant information in the remainder of Dr. Hartman's report that does not support the ALJ's evaluation of Dr. Hartman's opinion. Plaintiff

> acknowledged that he gets fixated on certain things such [as] world history. He often takes things overly seriously and literally. He tends to get agitated when exposed to noise and commotion. His father reports that the claimant does not understand jokes. He often has morbid thoughts. He tends to get nervous in crowds and when socializing with people. He also reportedly is too nervous to drive.

T. at 398.  Dr. Hartman's objective findings also appear to support his conclusions: he notes Plaintiff's attention and concentration "appeared moderately impaired" because "he could do the counting without difficulty, but was slow with calculations and made some errors on serial 7s."  T. at 399.  Plaintiff's recent and remote memory skills "appeared to be generally intact" because Plaintiff "could recall 4 out of 4 objects immediately and 3 out of 4 after five minutes. He could perform 5 digits forward and 3 backward."  *Id.*  Plaintiff's "cognitive functioning" "appeared to be *near* the average range with a *nearly* average general fund of information."  *Id.* (emphasis added). Plaintiff's ability to perform these tests at all supports Dr. Hartman's conclusion that Plaintiff "is able to understand, remember, and apply simple directions."  *Id.*  Plaintiff's self-reported activities of daily living support Dr. Hartman's conclusion that Plaintiff "is able to maintain an ordinary routine. He can maintain personal hygiene and maintain awareness of hazards."  *Id.*  To that end, plaintiff describes a basic level of self-sufficiency including dressing, bathing, and grooming himself, and preparing simple meals.  *Id.*  Plaintiff describes a daily routine involving some simple chores, computer use, and occasional exercise on a bike or elliptical trainer.  *Id.*

Dr. Hartman's conclusions are generally well-supported by objective medical evidence and his interview of plaintiff.  Dr. Hartman's conclusion that Plaintiff experiences "[m]ild to moderate difficulty understanding, remembering, and applying complex directions" is supported by plaintiff's self-reported tendencies to feel "easily overwhelmed" and "take things overly seriously or literally," as well as objective testing including slow performance on mathematical equations and "errors on serial 7s."  T. at 398-99.  Dr. Hartman's conclusion that plaintiff suffers "[m]oderate difficulty using

17

reason and judgement" is supported by objective findings that plaintiff's insight is "Fair to poor" and his judgment is "Fair."  T. at 399.  Dr. Hartman's findings of "[m]oderate to marked difficulty interacting adequately with others" are supported by plaintiff's aforementioned monotonous speech, fair to poor eye contact, and restricted affect.  T. at 399; s*ee also* T. at 397.  Dr. Hartman's findings of "[m]ild to moderate difficulty sustaining concentration" is supported by self-reported "concentration problems and learning difficulties" and "mildly impaired" attention and concentration during testing.  T. at 398-99.  Dr. Hartman's finding of "[m]oderate to marked difficulty regulating emotions" is supported by plaintiff's self-reported "loss of interest" and tendency to feel "easily overwhelmed" and agitated "when exposed to noise and commotion," and his frequent "morbid thoughts."  T. at 397-98.  Plaintiff's cooperative and pleasant behavior during his examination counteracts that finding, although the ALJ does not raise this contradiction himself.  *See* T. at 26.  The ALJ cites plaintiff's cooperative and pleasant behavior solely to undermine Dr. Hartman's findings in "the areas of interacting with others and adapt and managing oneself."  T. at 26.  However, the ALJ does not raise this contradiction, but even if he did, plaintiff's ability to behave during one examination does not outweigh his subjectively and objectively enumerated difficulties nor indicate that he could appropriately regularly interact with others in the work setting even on an occasional basis, as was concluded in the RFC.  *See* T. at 26.

The ALJ notes in the final sentence of his assessment of Dr. Hartman's opinion that plaintiff:

> was never psychiatrically hospitalized and has never taken psychotropic medications and only received some mental health counseling in school, which is fairly inconsistent with

> the range of moderate to marked limitations in the areas of
> adaptation and interacting with others.

T. at 26 (citing T. at 397).  An ALJ "is not free to set his own expertise against that of a physician who [submitted an opinion to or] testified before him."  *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (quoting *McBrayer v. Sec. of Health and Hum. Servs.*, 712 F.2d 795, 799 (2d Cir. 1983)).  Neither Dr. Hartman, nor any of the other opining doctors or non-examining providers, have addressed the significance of plaintiff's limited mental health treatment.  There is no medical opinion indicating that psychiatric hospitalization or greater mental health treatment would be considered expected, warranted, or useful where a person has moderate to marked difficulties interacting with others due to autism or that plaintiff's specific symptomology would be expected to require or benefit from such interventions.  As with Dr. Hartman, both Drs. Hennessey and Momot-Baker mention these facts without explaining their significance, if any.  T. at 71, 91.  "In the absence of supporting expert medical opinion addressing plaintiff's apparently limited mental health treatment,  or that the absence of such treatment is at all significant, the ALJ should not have engaged in his own evaluations of the medical findings."  *Filocomo v. Chater*, 944 F.Supp. 165, 170 (E.D.N.Y. 1996); *see generally Morales v. Berryhill*, 239 F.Supp. 3d 1211, 1216 (E.D. Cal. 2017) (noting the fact that a plaintiff "was not psychiatrically hospitalized does not mean that he did not have a mental health impairment that prevented him from working.")

To the issue of plaintiff's treatment history, an ALJ can consider "medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis" in making his or her disability determination.  20 C.F.R. §§ 404.1513(a)(3); *see Penfield v. Colvin*, 563 F.App'x 839, 840 (2d Cir. 2014) (summary order) (noting that a purely

"'conservative treatment' regimen" can weigh against a finding of disability) (citation omitted). That plaintiff has never been psychiatrically hospitalized, has never been prescribed psychotropic medication, and received only some counseling may weigh against a finding of disability. *See Penfield*, 563 F.App'x at 840. However, the ALJ does not discuss plaintiff's mental treatment history in the context of making a disability interpretation. The ALJ instead mentions plaintiff's conservative mental health treatment solely for the purpose of "substitut[ing] his own judgment for competent medical opinion." *Balsamo*, 142 F.3d at 81 (quoting *McBrayer*, 712 F.2d at 799).

In sum, the ALJ failed to "explain how [he] considered" the consistency of Dr. Hartman's opinion with "the evidence from other medical sources and nonmedical sources in the claim," and addressed the supportability of Dr. Hartman's opinion in a fashion that no reasonable factfinder could conclude is supported by substantial evidence. 20 C.F.R. §§ 404.1520c(b)(2), (c)(2). Thus, the ALJ failed to apply the correct legal standard in reviewing Dr. Hartman's opinion.

### 2. Lorin Williams, Psy.D.

The ALJ did not assess the consistency of Dr. Williams' opinion but did assess its supportability in a manner sufficient to meet the legal standard. *See Loucks*, 2022 WL 2189293, at *2 (noting that an ALJ's failure to explain how they considered the supportability or consistency factors is a procedural error.); *see also Jennifer A. v. Comm'r of Soc. Sec.*, No. 1:22-CV-1167, 2023 WL 8654215, at *4 (N.D.N.Y. Dec. 13, 2023) (noting that an ALJ analysis is legally proper, despite never using the words 'supportability' or 'consistency,' when their articulation "is sufficient for the Court to glean

[their] rationale.)  The first sentence of the ALJ's discussion of Dr. Williams' opinion is a

summary of her conclusion, namely:

> that an IEP[8] under the classification of autism be considered
> given the results of the examination that revealed that the
> claimant struggled in his interactions with others and
> adapting and managing himself, among other findings.

T. at 26 (citing T. at 287-288). This summary is, like in the preceding paragraph, used to

assess consistency with the ALJ's RFC.  This is a misapplication of the consistency

standard, which looks to an opinion's consistency with "evidence from other medical

sources and nonmedical sources in the claim" and not consistency with the RFC.  20

C.F.R. § 404.1520c(2).  The ALJ proceeds to cite and summarize two pieces of

evidence that Dr. Williams relied on in making her conclusion – "an Autism Spectrum

Evaluation" and findings from an interview with plaintiff about his forgetfulness,

distractibility, tendency toward disorganization, and difficulties with multitasking and task

completion.  T. at 26 (citing T. at 283, 286).  The ALJ's point is clear enough: the ALJ

found Dr. Williams' opinion to be persuasive because her conclusion that Plaintiff should

receive an IEP under the classification of autism is supported by objective medical

testing in the form of an Autism Spectrum Evaluation and other medical evidence in the

form of a clinical interview, which indicates "below average . . . adaptive functioning and

demonstrated abnormalities in communication," as well as "problems with some

executive functions, including being forgetful, being easily distracted, disorganized, and

easily sidetracked, with difficulties multitasking and finishing tasks."  T. at 26 (citing T. at

283).  Despite the ALJ's less-than-perfect clarity, the analysis on the issue of

---

[8] IEP is an acronym for Individualized Education Program.

supportability is articulate enough to allow the Court to glean the rationale.  Thus, it is supported by substantial evidence.  *See Jennifer A.*, 2023 WL 8654215, at *4.

Although the ALJ assessed Dr. Williams' opinion for supportability in a legally sufficient fashion, the ALJ did not assess Dr. Williams' opinion for consistency with "evidence from other medical sources and nonmedical sources in the claim."  20 C.F.R. § 404.1520c(2).  Thus, because the ALJ did not provide a consistency assessment of Dr. William's opinion, the ALJ failed to apply the correct legal standard.  *See* 20 C.F.R. §§ 404.1520c(b)(2), (c)(2); *see also Loucks*, 2022 WL 2189293, at *4.

### 3. Karen Fein, School Psychologist

The ALJ properly assessed Dr. Fein's opinion for persuasiveness in terms of consistency and supportability.  The ALJ's analysis of both factors was articulated to a level sufficient to meet the substantial evidence standard.  The ALJ begins his assessment of Dr. Fein's opinion by referencing some of her findings, namely that plaintiff "has difficulties with writing, and demonstrates difficulties with understanding oral discourse, in addition to difficulties socializing with others, and adapting to changes in routine."  T. at 26 (citing T. at 184).  The ALJ mentions consistency with the RFC for the final time, which is not relevant for consistency analysis under 20 C.F.R. § 404.1520c(c)(2) because it is not probative of consistency with evidence from other medical sources and nonmedical sources in the claim.  T. at 26.  The ALJ's statement here about consistency with the RFC is merely "awkward phrasing" because the ALJ proceeds to offer a legally-supportable consistency analysis. Dkt. No. 17 at 14; *see Kirk T. v. Comm'r of Soc. Sec.*, 5:21-CV-292, 2022 WL 2753567, at *8 (N.D.N.Y. July 14, 2022) (noting that an ALJ's "awkward wording" can be ignored when the meaning is

clear from context.)  The ALJ cites to some of the objective medical evidence that supports Dr. Fein's findings, namely "CPI scores and WISC V Indexes."  T. at 26 (referencing T. at 179-81).  Accordingly, the ALJ committed no legal error in his supportability analysis of Dr. Fein's opinion.

The ALJ proceeds to make a similarly brief but consistent sufficient consistency analysis, as well, noting that "these scores are consistent with no more than moderate difficulties given the claimant's ability to score relatively well in school," and Plaintiff's testimony that "he was doing 'fine' in his GED classes."  T. at 27 (citing T. at 48).  The ALJ's articulation of the persuasiveness of Dr. Fein's opinion is not perfectly structured, but such is not required because the ALJ's meaning is clear and his articulation of the critical factors meets the requirements stipulated by 20 C.F.R. § 404.1520c. Accordingly, as the supportability and consistency analyses are properly supported, there is no legal error in the ALJ's review of Dr. Fein's opinion.  *See Kirk*, 2022 WL 2753567, at *8.

### 4. S. Hennessey, Ph.D.

The ALJ did not assess the supportability of Dr. Hennessey's PAMF at all, but properly assessed its low consistency with the record.  The ALJ began his assessment with a summary of Dr. Hennessey's findings, noting that "claimant has mostly mild mental health limitations but for moderate limitations interacting with others."  T. at 27 (citing T. at 65).  The ALJ assessed this finding as "not persuasive because it is not consistent with the diagnoses, treatment records, and other objective evidence []."  *Id.* (internal citation omitted).  The ALJ contrasted Dr. Hennessey's opinion with Dr. Williams', noting that her assessment "revealed that the claimant had difficulties in

various areas of which included adapting and managing himself and completing tasks and interacting with others." *Id.* This consistency analysis meets the requirements of 20 C.F.R. § 404.1520c(c)(2) because it compares Dr. Hennessey's PAMF with "other medical sources." In articulating this analysis, the ALJ has outlined inconsistency between Drs. Hennessey and Williams' opinions. "In our review, we defer to the Commissioner's resolution of conflicting evidence." *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) (citing *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998)).

The ALJ properly articulated the consistency of Dr. Hennessey's opinion "with the evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. § 404.1520c(c)(2). However, the ALJ never assessed Dr. Hennessey's opinion for supportability in terms of "objective medical evidence and supporting explanations." 20 C.F.R. § 404.1520c(c)(1). Thus, despite a proper consistency analysis, the lack of a supportability analysis is a failure to meet the articulation requirements of 20 C.F.R. § 404.1520c. This is a legal error and renders the ALJ's review of Dr. Hennessey's opinion unsupported by substantial evidence. *See Loucks*, 2022 WL 2189293, at *4.

### 5. M. Momot-Baker, Ph.D.

The ALJ did not address the consistency of Dr. Momot-Baker's PAMF and addressed its supportability such that such that "a reasonable factfinder would *have to conclude otherwise*" in assessing whether the opinion was supported by substantial evidence. *Brault*, 683 F.3d at 448. In assessing Dr. Momot-Baker's PAMF, the ALJ offers a mitigatory defense of its shortcomings and cites no evidence in support of its persuasiveness. The ALJ assesses Dr. Momot-Baker's PAMF in the same paragraph

as the review of Dr. Hennessey's opinion, stating as an introduction "the undersigned is more persuaded by the opinion of Dr. Momot-Baker who indicated that the claimant has mostly moderate mental health limitations but for mild limitations understanding, remembering, and applying information."  T. at 27 (citing T. at 84). The ALJ acknowledges that Dr. Momot-Baker "did not examine the claimant."  *Id.*  This is acceptable under 20 C.F.R. § 404.1520c, but whether the provider examined the claimant is to detract only slightly from the persuasiveness of the resulting opinion. "Relationship with the claimant" is a factor which the ALJ must consider in assessing the persuasiveness of a PAMF, but it is not one of the "[m]ost important factors" that ALJs are bound to discuss explicitly.  20 C.F.R. § 404.1520c(c)(3), (b)(2).  However, every subfactor under 20 C.F.R. § 404.1520c(c)(3) together weighs against the persuasiveness of Dr. Momot-Baker's PAMF.  Dr. Momot-Baker did not have a "treatment relationship" with plaintiff; she never examined plaintiff; she did not provide plaintiff with any treatment; she did not perform or order any "examinations and testing" on plaintiff; and she "only review[ed] evidence in [plaintiff's] folder."  *See* 20 C.F.R. § 404.1520c(c)(3).

The ALJ acknowledges Dr. Momot-Baker's lack of relationship with plaintiff, but never supports his persuasiveness analysis with references to demonstrate the opinion's consistency and supportability.  The ALJ notes "this opinion is generally persuasive because it is generally consistent with the diagnoses, treatment records, and other objective evidence [] . . ."  T. at 27 (internal citation omitted).  This is a recitation of the consistency standard, not an application.  The ALJ never compares Dr. Momot-Baker's PAMF with "evidence from other medical sources and nonmedical sources in

the claim." 20 C.F.R. § 404.1520c(c)(2). The ALJ proceeds into a supportability analysis, stating that the opinion is "generally supported by accompanying record review notes [] that revealed that the claimant had accommodations in school such as social work services, guided notes, and the use of a word processor." *Id.* (citing T. at 88, 90.) The ALJ also references Dr. Momot-Baker's review of plaintiff's "difficulties with eye contact and impaired attention and concentration." *Id.* (citing T. at 90.) The ALJ does not articulate why these findings are consistent with "mostly moderate mental health limitations but for mild limitations understanding, remembering, and applying information." *Id.*

"[W]ithout some clear discussion of the supportability factor[,] the Court is left to guess at the ALJ's reasoning, which frustrates meaningful review." *Nicole L. v. Kijakazi*, No. 6:20-CV-01576 (NAM), 2022 WL 160274, at *8 (N.D.N.Y. Jan. 18, 2022); *Vellone v. Saul*, No. 1:20-CV-00261, 2021 WL 319354, at *4 (S.D.N.Y. Jan. 29, 2021) ("Eschewing rote analysis and conclusory explanations, the ALJ must discuss the crucial factors in any determination with sufficient specificity to enable the reviewing court to decide whether the determination is supported by substantial evidence."), *report and recommendation adopted sub nom. Vellone on behalf of Vellone v. Saul*, 2021 WL 2801138 (S.D.N.Y. July 6, 2021); *see, e.g.*, *also Davis v. Comm'r of Soc. Sec.*, No. 20-CV-4282, 2024 WL 278425, at *4 (E.D.N.Y. Jan. 25, 2024) (remanding where the ALJ did not adequately analysis the supportability factor).

In sum, the ALJ acknowledges the absence of a treatment relationship between Dr. Momot-Baker and plaintiff, but exclusively offers evidence that undermines the

PAMF's persuasiveness without pointing to the evidence that bolsters it. This discussion has the form of a consistency analysis, but its substance is lacking such that a reasonable factfinder could not rely on it to support the ALJ's stated position. Thus, the ALJ failed to meet the requirements of 20 C.F.R. § 404.1520c(c)(1)-(2) regarding his review of Dr. Momot-Baker's PAMF.

### B. The ALJ's error was not harmless

In <u>Johnson v. Bowen</u>, 817 F.2d 983 (2d Cir. 1987). the Second Circuit concluded that remand for reconsideration was required where "findings of either disability or no disability could be sustained in this case." <u>Id.</u> at 986-87.[9] The Court noted that a medical provider had concluded that the plaintiff was "disabled for any and all type of work activities" but the doctor's office notes and the plaintiff's testimony "suggest[ed] that [the plaintiff] was capable of performing light and sedentary work" during the relevant period. <u>Id.</u> at 985. However, the ALJ did not apply the proper rule to assess the medical provider's opinion and nothing in the decision indicated that the ALJ applied the rule or whether he considered what was required in applying the rule to his review of the medical provider's opinion. <u>See id.</u> at 986. Because the Court could not determine whether the correct legal principals were applied and concluded that the proper application of the rule did not make it clear whether the plaintiff would have been found disabled or not disabled, the Court held that remand was required. *See id*. "Where application of the correct legal principles to the record could lead to only one conclusion,

---

[9]  Although this <u>Johnson</u> was assessed under the treating physician rule, a standard of review of medical opinions which is no longer applied, the logic is still relevant here as the Court was assessing the appropriate result where it was not clear from the record whether the evidence could support either finding and it was not clear that the ALJ applied the proper standard for assessing medical opinions and whether the ALJ's determination was based upon substantial evidence.

there is no need to require agency reconsideration." *See id.* (citing *Havas v. Bowen*, 804 F.2d 783, 786 (2d Cir. 1986)).  Here, even if this Court were to apply the proper legal standards to review the opinions, "the present record does not compel but one conclusion." *Id.*

Here, substantial evidence exists to support a finding either of disability or no disability.  *See Johnson*, 817 F.3d at 986.  All five PAMFs and opinions are reasonably well supported.  The PAMFs are largely consistent with each other, Dr. Hartman's medical source statement is generally consistent with Dr. Williams' opinion, and Dr. Fein's opinion could be interpreted as consistent with either.  An ALJ could credit the findings of Drs. Hennessey and Momot-Baker, as well as determine that Dr. Fein's opinion is consistent with the PAMFs, while finding the opinions of Drs. Hartman and Williams to be unpersuasive.  Likewise, an ALJ could be persuaded by Drs. Hartman and Williams, interpret Dr. Fein's opinion to be consistent with Drs. Hartman and Williams', and determine that Drs. Hennessey and Momot-Baker's PAMFs are unpersuasive.  Either arrangement of opinions could be articulated in a legally sufficient manner, as long as the persuasiveness of each opinion is explicitly addressed and reviewed for supportability and consistency.  However, as noted, the ALJ did not properly address the supportability and consistency factors here.  Since a correct application of the legal standards to the evidence does not dictate a single conclusion, the ALJ's legal errors were not harmless.  *See Johnson*, 817 F.3d at 986.   There is, at least a reasonable likelihood that a different result could have been reached if the ALJ had properly evaluated the opinion evidence pursuant to the required regulations; thus, remand is appropriate.  *See Leto v. Comm'r of Soc. Sec.*, No. 22-CV-00863, 2023 WL

2344936, at *16 (S.D.N.Y. Mar. 3, 2023) (procedural error was not harmless where a finding of greater limitations could result in determination that plaintiff was unable to work); *see also Sawicki v. Comm'r of Soc. Sec.*, No. 21-CV-02093, 2023 WL 5164212, at *11 (S.D.N.Y. Aug. 11, 2023).  Although "'a court 'may affirm' despite procedural error 'where the ALJ's consideration of the relevant factors can be gleaned from the ALJ's decision as a whole'"  *Wanda N.*, 2022 WL 4376484, at *7 (quoting *John L. M. v. Kijakazi*, No. 5:21-CV-368 BKS/TWD, 2022 WL 3500187, at *2 (N.D.N.Y. Aug. 18, 2022)), the Court is unable to make such an assessment here.

Accordingly, the ALJ's decision should be vacated, and this matter should be remanded to the SSA for further proceedings consistent with this report and recommendation.  *See Johnson*, 817 F.2d at 986; *see Loucks*, 2022 WL 2189293, at *2 (noting that "[w]hen the ALJ has committed procedural error, we generally remand with instructions to reconsider the disability claim consistent with the procedural mandates of the governing regulations."); *Estrella v. Berryhill*, 925 F.3d 90, 97 (2d Cir. 2019) (remanding to the SSA when the ALJ procedurally erred, and a "searching review of the record" provides no assurance that the "substance of the . . . rule was not traversed.") (quoting *Halloran v. Barnhart,* 362 F.3d 28, 32 (2d Cir. 2004)).

On remand, the ALJ should properly evaluate the persuasiveness and supportability of each of the opinions and specifically and fully explain his findings, evaluate plaintiff's daily activities in the context of the broader record, and, if determined to be necessary, further develop the record.  *See Briselida R. v. Comm. of Soc. Sec.*, 5:22-CV-01290 (TJM/ML), 2023 WL 9600841, at *11 (N.D.N.Y. Nov. 20, 2023), *report and recommendation adopted sub nom. Briselida R. v. O'Malley*, No. 5:22-CV-1290

(FJS/ML), 2024 WL 532568 (N.D.N.Y. Feb. 8, 2024); *Rivera v. Comm'r of the Soc. Sec. Admin.*, No. 19-CV-4630, 2020 WL 8167136, at *14 (S.D.N.Y. Dec. 30, 2020) ("If the ALJ fails adequately to 'explain the supportability or consistency factors, or bases her explanation upon a misreading of the record, remand is required.'"), *report recommendation adopted*, 2021 WL 134945 (S.D.N.Y. Jan. 14, 2021) (quoting *Andrew G.*, 2020 WL 5848776, at *5.

## VI. CONCLUSION

**WHEREFORE**, for the reasons stated herein, it is hereby

**RECOMMENDED**, that plaintiff's motion for judgment on the pleadings (Dkt. No. 15) be **GRANTED**, defendant's motion for judgment on the pleadings (Dkt. No. 17) be **DENIED**, and the Commissioner's decision be **REVERSED AND REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. Failure to object to this Report-Recommendation within fourteen days will preclude appellate review. *See Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72.

Dated: February 29, 2024
     Albany, New York

Christian F. Hummel
U.S. Magistrate Judge